Richmond v. Vassalborough.

*The inhabitants of* RICHMOND *vs. The inhabitants of* VASSALBO-
ROUGH.

IN a question of domicil, evidence of the party's conduct afterwards as well
as before, may be received to ascertain his intention on a particular day.

It is of no importance, in a question of domicil under *Stat.* 1821, *ch.* 122,
whether the occupancy of the house in which the pauper dwelt was by right
or by wrong.

THE question in this case was upon the domicil of one *Parker
Burgis*, a pauper, at the time of the passage of *Stat.* 1821, *ch.* 122.
In the autumn of 1818, he removed from *Gardiner* to *Vassalbo-
rough*; which place he left after the reaping season in the following
year, and returned to *Gardiner*, partly, as he said, because he could
obtain provisions and employment better, as he believed, in the lat-
ter place; and partly because he was dissatisfied with the conduct
of his wife, with whom he was determined never to live again until
she should manifest a disposition to behave better. He remained at
*Gardiner*, without any satisfactory accounts from his wife, till *April*
1821, supporting himself by various kinds of common labor; during
which time, and prior to the passage of the statute, he furnished his
family two or three times with some trifling supplies. The wife, in
the same year in which her husband left her, went with her two
youngest children, there being five others who were minors, to *China*,
where she resided till the next spring; when she returned to *Vas-
salborough*, where, finding an empty house, she went into it without
right, and dwelt there, with her two children, till *April* 1821. Dur-
ing this period she once committed adultery; but in *April* 1821,
she was reconciled to her husband, who received her and her chil-
dren to a home which he provided in *Gardiner*, where they dwelt
several years. *Burgis* testified that when he left his family, and
went to work in *Gardiner*, his resolution as to returning was not ab-
solute, but conditional, as above stated.

All this evidence the Chief Justice left to the jury, in order to determine the pauper's intention. He was requested, by the counsel for the defendants, to instruct the jury that the reconciliation of the parties in *April* 1821, could not operate retrospectively upon the question of domicil; but that they must regard his intention exclusive of any consideration of that fact, and only as it existed on the 21st of *March* 1821, when the statute was enacted. This he declined. But he did instruct them that it was not material whether she occupied the house in *Vassalborough* by right or by wrong; nor whether she was criminal, or not, in the absence of the husband; he having testified that he did not know it till the time of their reconciliation. A verdict was returned for the plaintiffs; which was taken subject to the opinion of the court whether the jury were properly instructed; and whether the instructions requested were properly withheld.

*Allen,* for the plaintiffs.

*Leach* and *Sprague,* for the defendants.

MELLEN C. J. delivered the opinion of the Court.

The jury having, upon a consideration of all the evidence, returned a verdict against the defendants, judgment is to be entered thereon, if the instructions given to them were correct, and if those which were requested were improperly withheld. With respect to the instructions given, we perceive no incorrectness. It certainly does not require argument or authorities to shew that the character of the residence and home in a particular town, under the statute of *March* 21, 1821, depends in no degree on the question whether such residence or home was on land, and in a house by permission of the owner; the lawfulness of the possession in such cases is not contemplated by the statute. Nor do we perceive that in the present case the circumstance can have any effect directly or indirectly on the question of domicil; for *Burgis* himself, if conusant of the nature of his wife's entry into and occupation of the house in *Vassalborough,* which she found empty, does not appear to have authorised or consented to it. Neither does the criminality of the wife in the instance

Richmond *v.* Vassalborough.

mentioned, alter the case. The court do not look to the virtues or vices of a. pauper, or of his wife, in ascertaining the place of his legal settlement. Besides, in respect to the question of intention, her crime could have had no effect, inasmuch as the husband had no knowledge of it until their reconciliation in *April* 1821.

In regard to the inquiry, whether the *requested instructions* were properly withheld, we would observe that the answer must depend on several facts which we shall notice, and on the principles applicable to them. In the first place, we are perfectly satisfied, that from the time *Burgis* moved into *Vassalborough* in the fall of 1819, to the time he went to *Gardiner*, early in the autumn of the next year, he resided and had his home in *Vassalborough*. The case discloses all those facts necessary to establish this position beyond all doubt. We are equally clear that the temporary residence of the wife in *China*, and change of the place of her residence in *Vassalborough*, both having been her acts merely, without any authority or consent of *Burgis*, had no effect upon his rights and liabilities as an inhabitant of *Vassalborough*. Such a power as this does not belong to a wife; and public policy and the nature of the marriage contract, do not admit of it. The residence and home of *Burgis*, in the town of *Vassalborough*, not having been changed or lost by any act of his wife, our next inquiry is, whether the same consequences were occasioned by the acts of *Burgis* himself, and that by means of those acts, he acquired a settlement in *Gardiner*, by residing and having his home in that town on the day the statute was passed. The case of *Knox v. Waldoborough*, 3. *Greenl.* 455. shews that a residence of a man, even out of the United States, does not change his domicil, where he leaves a home and family in a town in this State, for the purpose of business, or seeking employment. In the case before us, *Burgis* left his wife and children at his home in *Vassalborough*, when he went to *Gardiner* in the fall of 1819. His object in going was two-fold: viz. partly to seek more profitable employment, and partly on account of his being dissatisfied with the conduct of his wife. He did not abandon his family; he furnished them small supplies on two or three occasions, while residing in *Gardiner*; and the case finds that he had

Richmond *v.* Vassalborough.

formed no absolute resolution never to return and live with his family. His resolution on this subject, when he went to *Gardiner*, was only conditional, depending on his wife's conduct; and while thus continuing conditional, a reconciliation took place, and, in consequence, he immediately sent to *Vassalborough*, and moved his children and furniture to *Gardiner*. All this took place in *April*. From these facts, it appears that he never absolutely deserted his wife and children, nor ever absolutely resolved so to do; and never having done either, what circumstance is there in this case, which operated to change his home from *Vassalborough* to *Gardiner*, till the actual change of it in *April*, by removing his children and furniture to *Gardiner*, where he and his wife then were? We do not perceive any. The facts of the case are certainly singular, but the legal principles which must decide the cause, are simple and well settled. In numerous cases arising under the statute of 1821, the question of domicil has depended on intention; for instance, as in *Knox v. Waldoborough*. So in the present case. This intention is to be ascertained, in many instances, from various and equivocal facts, which of course are always proper subjects for the consideration of a jury, and from which they may infer what such intention was. All the evidence in the case before us, was submitted to the jury, that they might draw their own conclusions as to the question of intention. Only a portion of the evidence is distinctly reported, because the points reserved had relation merely to the refusal of the judge to give specific instructions, when requested, as to one particular principle; and to the instructions which he did give respecting two other particulars, having nothing to do with the subject of intention. The jury have pronounced their opinion, as to the intentions of *Burgis* in going to and remaining at *Gardiner*. It remains for us to consider whether the requested instructions were properly or improperly withheld. The judge was requested to instruct the jury, "that the reconciliation of the pauper and his wife in *April* 1821, could have no retrospective operation as to the question of domicil, but that they must regard his intention as it existed on the 21st of *March*, 1821, exclusively of all consideration of that fact." There is no doubt but that the jury were to regard the intention as it then existed; but in order to ascertain

Richmond *v.* Vassalborough.

'what it then was, they might look to facts which took place after that time, in connection with those before. This is allowable, not to change the character or effect of antecedent facts, but for the purpose of learning distinctly what those facts were. Suppose we were this day trying a cause before the jury, and the question was, whether a pauper, when he left the town where he resided in 1820, left it with the intention of returning to his family, or of abandoning them and his home. Surely it would be proper to prove to the jury that the man had never returned or taken any care of his family; and the jury might properly consider these subsequent facts as aiding them in ascertaining what his intention was in the year 1820, when he left his home and family. So in the present case, the jury were authorised to consider the fact of reconciliation in *April,* in connection with the previous conduct of *Burgis,* his conditional resolutions, the continuance of his wife and children in *Vassalborough,* and his small supplies furnished to them, to enable them the better to decide the question of intention and of domicil. This question they have decided, on the evidence before them, and we perceive no sufficient reason for granting a new trial. *Judgment on the verdict.*